IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Raqib Abdul Al-Amin, ) | C/A No. 0:13-1176-BHH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Dennis Bush; Rhonda Sutton; Loyd Roberts; ) | |
| Glenn Sharman; Regginald Cruz; Associate ) | |
| Warden Mauney, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Raqib Abdul Al-Amin, a self-represented state prisoner, filed this civil rights matter pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 83.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Al-Amin of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 84.) Al-Amin filed a response in opposition and a cross-motion for summary judgment.[1] (ECF Nos. 87 & 88.) The defendants filed a reply and a response to Al-Amin's motion. (ECF Nos. 100 & 102.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted and Al-Amin's motion should be denied.

---

[1] To the extent Al-Amin attempts to raise additional claims in his subsequent filings, such as a claim under the Religious Land Use and Institutionalized Persons Act, Al-Amin has not filed a proper motion to amend his Complaint to include these additional claims. Accordingly, such claims are not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").



## BACKGROUND

Plaintiff complains that, while at Broad River Correctional Institution ("BRCI"), Defendants Sutton, Cruz, Sharman and Roberts (hereinafter "BRCI defendants") violated his constitutional right to practice his religion in violation of the First Amendment to the Constitution, South Carolina statute, and prison policy. Al-Amin identifies himself as a Shi'ah[2] Muslim. Specifically, Al-Amin alleges that while SCDC policy PS-10.05 directs chaplains to provide for all faith groups equally, it does not recognize different denominations within a religion—in this case the religion of Islam. Al-Amin alleges that as a result of his attempt to complain to the chaplain about the sectarian sermon that was being led by Sunni Muslims, he was retaliated against by Defendant Sutton, who removed Al-Amin from the approved list for Ramadan fasting. Al-Amin alleges that the BRCI defendants later had him transferred to Perry Correctional Institution, which Al-Amin contends is too far for his relatives to travel. Al-Amin alleges that after his transfer, Defendant Bush, after speaking with Defendant Sutton, placed him in lock-up. Al-Amin asks to be transferred back to BRCI; for an order restraining the defendants from harassing him; for SCDC to stop the removal of Shi'ah literature; to allow Shi'ah Muslims to lead prayers and give sermons and Islamic classes; and for damages.[3]  (See generally Am. Compl., ECF No. 48.)

Al-Amin also filed a Supplemental Complaint following his transfer to Perry Correctional Institution in which he alleges that Defendant Mauney retaliated against him because of his religious

---

[2] The court notes that the parties offer different spellings of this religion, including "Shi'ah," "Shi'ia," and "Shai'ia."

[3] To the extent Al-Amin seeks injunctive relief from the named defendants, his request appears to be moot, as Al-Amin is now housed at a different correctional facility from any of the named defendants.



beliefs by placing him in the Special Management Unit and by transferring him to McCormick Correctional Institution. (See generally Supp. Compl., ECF No. 107.)

## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a



complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Exhaustion of Administrative Remedies**

In this case, the BRCI defendants argue that Al-Amin has failed to exhaust his administrative remedies with regard to his claim that he was placed in SMU at Perry Correctional Institution in retaliation for exercising his First Amendment right to practice his religion. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002))



(emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC") is generally part of the available administrative remedies an inmate must exhaust.[4] See Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)).

The BRCI defendants argue that while Al-Amin filed a Step 1 grievance with regard to this claim, he failed to file a Step 2 grievance. (See Hallman Aff. ¶¶ 3-5, ECF No. 83-5 at 1-2.) In response to the defendants' assertions, Al-Amin summarily argues that he exhausted his administrative remedies and attaches a different Step 1 grievance in which he alleged that the BRCI defendants conspired against him and had him transferred to Perry. (See Pl.'s Resp. in Opp., ECF No. 87 at 12, ECF No. 87-2 at 14.)

---

[4] Al-Amin's response in opposition to the BRCI defendants' motion for summary judgment implies that Al-Amin may not have exhausted his claim of conspiracy or the claim that he was retaliated against by being transferred. However, as this argument was not raised by the BRCI defendants, see Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005), these claims are addressed on their merits below.



Accordingly, it does not appear that Al-Amin filed a Step 2 grievance as to his placement in SMU, and the defendants are entitled to summary judgment on this claim.

**C.     First Amendment Claim**

Inmates retain their First Amendment rights in prison.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  In Turner v. Safley, 482 U.S. 78, 89 (1987), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  To meet this standard, the Turner Court identified four factors to consider:  (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.  Id. at 89-90.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id. at 89; see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ("Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Al-Amin contends that his First Amendment rights were violated because South Carolina Department of Corrections ("SCDC") policy does not recognize different groups within the religion of Islam.  In support of their motion, the defendants provide affidavit testimony from Senior Chaplain Michael Brown, Chaplain G. Reginald Cruse, and Chaplain Glenn Sherman, as well as affidavit testimony from Warden Dennis Bush.  Senior Chaplain Brown attests that there are two



major groups within Islam—the majority is comprised of Sunni Muslims and the minority of Shi'ia Muslims. (Brown Aff. ¶ 4, ECF No. 83-2 at 1.) He further avers that, within SCDC, Shi'ia Muslims comprise approximately three percent of the Muslim inmate population while Sunnis comprise approximately ninety-seven percent. (Id.) According to Chaplain Cruse, SCDC Policy #PS-10.05 entitled "Inmate Religion" states that "the constitutional guarantees of religious freedom for inmates are protected within the limitations of security and safety necessary to be maintained in a correctional setting." (Cruse Aff. ¶ 3, ECF No. 83-8 at 1.) Chaplain Cruse avers that, per SCDC policy, common services are available for Islamic inmates, and that this practice is followed in other religions as well.[5] (Id. at ¶ 4, ECF No. 83-8 at 2.) Chaplain Sherman attests that he met with Al-Amin several times concerning religious issues and that Al-Amin wanted to meet with several other Shi'ia Muslim inmates. (Sherman Aff. ¶ 2, ECF No. 83-7 at 1.) Chaplain Sherman further avers that he advised Al-Amin that he could meet with other inmates one-on-one but not as a group, and that he assisted Al-Amin in making those arrangements. (Id.)

Accordingly, the defendants have presented evidence that shows that the denial of separate recognition and prayer groups for Shi'ia Muslims is in furtherance of a legitimate penological interest, that common services are available for Islamic inmates, and that this practice is followed in other religions as well. See Cutter v. Wilkinson, 544 U.S. 709, 722–723 (2005) (recognizing that, in a prison setting, safety and security are compelling interests in determining accommodation of religious observances). Moreover, other courts in this district have found that the policy at issue here does not violate an inmate's First Amendments rights. See, e.g., Harbin v. SCDC, C/A No.

---

[5] Moreover, Chaplain Sherman avers that no approved Shi'ia literature has been removed and that the literature of any faith would only be restricted if it created a security concern such promoting violence, making derogatory remarks, making slanderous remarks, or subversive activity. (Sherman Aff. ¶ 6, ECF No. 83-7 at 1-2.)



6:13-1973-JMC, 2014 WL 4955200 (D.S.C. Sept. 30, 2014) (finding no violation where inmate claimed that separate Friday Jumu'ah services were not provided for Nation of Islam religion); Allen v. SCDC, C/A No. 3:10-939-HMH-JRM, 2012 WL 1655297 (D.S.C. Apr. 24, 2012), Report and Recommendation adopted by 2012 WL 1655295 (May 10, 2012) (finding the generic Islam services provided by SCDC did not impose a substantial burden on a Nation of Islam inmate's exercise of religion).

Upon review of Al-Amin's arguments, the court finds that in light of the deference afforded to prison officials, Al-Amin has failed to present sufficient evidence demonstrating that SCDC's rationale for the policy is not "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89; see also Beard, 548 U.S. at 531. Accordingly, the defendants are entitled to summary judgment on this claim.

**D.     Retaliation**

Al-Amin also alleges that he was retaliated against for attempting to exercise his First Amendment rights. Specifically, he alleges that he was denied participation in Ramadan in 2012 and that he was transferred to Perry Correctional Institution where he was subsequently placed in lock-up. In his Supplemental Complaint, Al-Amin further alleges that Defendant Mauney placed him in the Special Management Unit and transferred him to McCormick Correctional Institution.

To state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id. at 74. An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v.



Bedsole, 48 F.3d 1376, 1387 n.11 (4th Cir. 1995).  An inmate must also allege facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights."  Am. Civil Liberties Union v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993).  Further, claims of retaliation by inmates are generally regarded with skepticism because " '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.' "  Cochran, 73 F.3d at 1317 (alteration in original) (quoting Adams, 40 F.3d at 74).

In his affidavit, Chaplain Cruse describes the incident that occurred on August 10, 2012 during the Jumu'ah[6] service in which Al-Amin confronted him and stated that "they aren't teaching right" and that "it must change or I am going to do something about it."  (Cruse Aff. ¶ 5, ECF No. 83-8 at 2.)  Chaplain Cruse avers that he asked Al-Amin multiple times what he meant by his statements, but received no answer.  (Id.)  Chaplain Cruse attests that he felt that Al-Amin's agitated appearance and statements appeared threatening, so he began preparing the paperwork to provide to security.  (Id.)  Chaplain Cruse avers that before he could complete the paperwork, Jumu'ah ended and Cruse witnessed Al-Amin aggressively confront one of the Muslim inmate leaders.  (Id. at ¶ 6.)  Chaplain Cruse swears that he reported both of these incidents to Major Sharonda Sutton, and later learned that because of these incidents Al-Amin lost his privilege to participate in Muslim religious activities at BRCI.  (Id. at ¶¶ 6-7; see Report, ECF No. 83-3.)

The BRCI defendants have provided affidavit testimony in which they explain that Al-Amin's conduct, described above, created a security issue that resulted in Al-Amin's losing his privilege to participate in BRCI Muslim activities.  (Cruse Aff. ¶ 7, ECF No. 83-8 at 2.)  Additionally, Chaplain Cruse avers that the chaplains have no authority to transfer an inmate to

---

[6] According to Senior Chaplain Brown, Jumu'ah is a required service under Islam and consists of a Friday congregational prayer and worship time.  (Brown Aff. ¶ 6, ECF No. 83-2.)



another institution. (Cruse Aff. ¶ 8, ECF No. 83-8 at 2.) Defendant Bush, a major at Perry Correctional Institution, avers that after Al-Amin's transfer to Perry, the staff received intelligence that indicated a possible disturbance might occur within the Muslim community at Perry. (Bush Aff. ¶ 2, ECF No. 83-9 at 1.) According to Bush, Al-Amin was determined to be behind the division and was placed in lock-up as a security measure to prevent an incident or disturbance from occurring. (Id. ¶ 3-4.)

Al-Amin's second allegation with regard to his housing while at Perry is addressed by Defendant Florence Mauney, Associate Warden assigned to Perry Correctional Institution, who provides affidavit testimony which attests that, following an attack on inmate Smith by inmate Matthews, Al-Amin was suspected to have also been involved in the attack and an investigation was conducted. (Mauney Aff. ¶¶ 4-5, ECF No. 124-2 at 1-2.) Mauney further avers that Al-Amin and any other inmates suspected of being involved in the incident would have remained in the Special Management Unit until the conclusion of the investigation by the Division of Investigations. (Id. at ¶ 6, ECF No. 124-2 at 2.) Mauney swears that she did not have any involvement in the investigation of Al-Amin, nor did she have involvement in the decision to transfer Al-Amin. (Id. at ¶¶ 6, 9.)

Al-Amin states that it was his duty as an elder of Islam to approach the inmate after prayer to inform him that his statements were incorrect; however, he summarily disputes that his actions were aggressive. With regard to the incident at Perry Correctional Institution, Al-Amin appears to summarily speculate that he was held in SMU because inmate Matthews was his cell mate and because Al-Amin had converted inmate Matthews to Islam. Al-Amin's conclusory assertions without more are insufficient to establish a retaliation claim, much less refute the defendants' properly supported motion for summary judgment. See Adams, 40 F.3d at 75; see also Fed. R. Civ.



P. 56(c), (e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Al-Amin has failed to set forth any evidence, other than his unsupported beliefs, to establish that the defendants' actions with regard to either incident were not related to a legitimate penological interest but rather were in retaliation for Al-Amin's attempt to exercise his First Amendment right to practice religion. Furthermore, there is no constitutional right for a prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). Accordingly, the defendants should be granted summary judgment with regard to Al-Amin's retaliation claims.

**E.    State Law Claim**

The BRCI defendants are also entitled to summary judgment on Al-Amin's civil conspiracy claim against them. Under South Carolina law, a "civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff and thereby causing special damage." People's Fed. Savings & Loan Ass'n v. Resources Planning Corp., 596 S.E.2d 51, 56-57 (S.C. 2004). To establish this claim, a plaintiff must produce evidence from which "a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." Island Car Wash, Inc. v. Norris, 358 S.E.2d 150, 153 (S.C. Ct. App. 1987). In considering such a claim, the question is "not whether lawful or unlawful acts or means are employed to further the conspiracy, but whether the primary purpose or object of the combination is to injure the plaintiff." Lee v. Chesterfield Gen. Hosp., Inc., 344 S.E.2d 379, 383 (S.C. Ct. App. 1986).

Page 11 of 13



On the record before the court, no reasonable jury could find the requisite combination or joint assent. As discussed above, the BRCI defendants are entitled to summary judgment on Al-Amin's First Amendment and retaliation claims. No evidence remotely suggests that the BRCI defendants acted together to cause any harm to Al-Amin, either by preventing him from practicing his religion within the parameters established by SCDC policy or by retaliating against him for complaining about the policy at issue. Although direct evidence of a civil conspiracy is not required, no jury could reasonably infer a combination or joint assent between the BRCI defendants in the face of this record. See People's Fed. Savings & Loan Ass'n, 596 S.E.2d at 57; Island Car Wash, Inc., 358 S.E.2d at 153. Accordingly, the BRCI defendants are entitled to summary judgment on this claim.

**F.     Other Allegations**

To the extent that Al-Amin's Complaint and supplemental Complaint may be construed to allege any other causes of action, the court finds that Al-Amin has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### RECOMMENDATION

For the above reasons, the court recommends that the defendants' motions be granted (ECF Nos. 83 & 124) and Al-Amin's motion denied (ECF No. 88).

*[signature: Paige J. Gossett]*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 21, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).